Good Lord, look at all this money. A lot of people there. A lot of money being made today. Okay, Ms. Silver, whenever you're ready. Good morning. May it please the court. The government concedes that the district court erred in calculating the guideline range in this case. That error was not harmless for two reasons. First, the sentence was procedurally unreasonable because the district court based its hypothetical variance on Mr. Martinez-Rivera's gang affiliation without making a factual finding as to what that affiliation was, and therefore this court is not able to effectively review the district court's decision. Second, assuming this court agrees with the government's position that the significant variance was based solely on gang membership that terminated eight years earlier then that 41-month sentence was substantively unreasonable. Beginning with the procedural error, the district court violated Rule 32 when it failed to make a factual finding as to Mr. Martinez-Rivera's gang affiliation and then used that affiliation to support a significant upward variance. At almost every stage in his sentencing presentation, Mr. Martinez-Rivera repeated that he had left the gang eight years earlier. But in imposing its alternative sentence, the court relied exclusively on gang affiliation, and then if you look at the record, the court went back and forth in using the present and past tense in referring to that affiliation. And then its reliance on the Hernandez-Villanueva case, which is a case from this court, confused matters even more because that case was expressly about present and persistent gang affiliation. And if you actually look at the language that the district court used, it said, I would impose a 41-month variance sentence for the same reasons that were relied on by the Fourth Circuit and by Judge Chazanow in Hernandez-Villanueva. So that makes it even less clear as to what the court was basing its decision on. Well, could the court have sentenced him for his past gang membership, specifically given the nature of MS-13? Absolutely. The court could give a variance based on gang membership. The court could give the sentence it believes is reasonable. I believe, and that's the substance of my second argument, that imposing the kind of variance that it did impose, a variance of 8 to 14 months, up to 41 months, based just on the past 8-year-old gang affiliation with no other aggravating circumstances, that that is not a substantively reasonable sentence. And I think it's even less reasonable, given the court's almost exclusive reliance on one case that involved present and persistent gang membership. And I think the problem here is that this court actually can't review the court's decision. Either it has to assume the past gang membership. We can do that. I don't think that that is the correct approach to take. Or it's left really with nothing to do, because it doesn't know what the court was deciding in this case. So the real issue is substantive reasonableness and not procedural reasonableness? No, Your Honor. There are two issues. The real issue is procedural reasonableness, Your Honor. And the way courts approach sentences is to first look at whether the court followed the correct procedure, so then it can then move on to make a substantive review. Because this court did not follow the correct procedure, because it did not engage in the fact-finding that was necessary, this court cannot engage in a substantive review. Now, I did make an alternative argument, because the government is saying that the court did make a factual finding and that it just found past gang membership. And so I have made an alternative argument that if you agree, then that sentence is substantively unreasonable. But I think the first argument, and frankly the clearer and stronger argument, is that this record is not clear as to whether or not Judge Titus was sentencing Mr. Martinez-Rivera based on past or present gang membership. And I would argue that the distinction is critical, and that's why this court really needs to know what the court was thinking. And I submitted a 28-J letter recently. I thought I understood you to say that if he was sentencing him based just on past membership, that was okay. It would have been procedurally okay if the record supported that. It would not have been substantively okay. Does the court understand the distinction? If you believe that reading this record, Judge Titus was only sentencing him based on past gang membership, that he actually made, if you can see in this record, which I can't, a factual finding that he left the gang eight years ago, and I'm still giving him this significant upward variance, then procedurally there would be no error. Well, what I'm thinking is it seems to me if he could base an upward variance on past membership or present membership, then any mistake is harmless. Well, that's not correct because the reason it's not harmless, Your Honor, respectfully, is because this court can't then review the substantive reasonableness because obviously he can base the sentence on either, but then whether the ultimate decision was reasonable depends on which it was, whether it was past or present membership. Unless we think it was reasonable on either basis. Absolutely, and respectfully, I would disagree strongly for a number of reasons. This court recently issued an immigration court decision that I submitted in a 28-J letter. It's Martinez v. Holder, in which the court actually found that former gang membership is an immutable characteristic of a particular social group, and that repudiation of gang membership is a critical aspect of a person's conscience that he should not be forced to change. And the court discussed at length in this decision the dangers that people face when they decide to withdraw from the gang. So to say that it was of no import that Mr. Martinez Rivera chose to withdraw from the gang is really not comporting with reality or with what this court has recognized. On the flip side. I would say from the record when Judge Titus said that he was going to make a recommendation that he not be co-housed with any MS-13 as a result of his expressed fear due to his claim of withdrawal from the MS-13 gang, couldn't we use that? Well, you then have to look at his next sentence, which is that I am not going to decide whether he withdrew or not. So what he was doing was that he was making a concession to me, and this was now, again, outside of the issue of what his sentence was. But in wording the judgment, he was making a concession to me that he would put in that Mr. Martinez Rivera claimed to withdraw. But he was expressly saying, I'm not going to tell you whether I agree with that. And did you object to that position? Absolutely, Your Honor, I did. If you actually look at the way the record is worded, the district court spent several pages starting around 184 explaining its sentence. And then as soon as it stopped explaining its sentence and said, are there any other questions, I responded, and I was counsel below. And I specifically said the first thing out of my mouth was, I do want to make sure that the record is clear that Mr. Martinez Rivera is not currently a member of MS-13. That was the first thing out of my mouth. And it was only after that that I moved on to discussing the BOP issue and that I wanted to make sure BOP knew he was no longer a member for housing purposes. And then I actually came back and again said, in a separate sentence, and also that for the record, the only evidence that's been presented today of gang membership dates back to 2004. So, I mean, I'm not sure what record the government thinks I was talking about, but it was the appellate record, Your Honor. And I was frankly a little bit surprised and taken aback when I heard the court's findings because we had been consistent in our assertion of withdrawal, and the court's findings were, as I've repeated, frankly, confusing. I mean, he said, is, has been, there was absolutely no evidence of present gang membership. So it was, the entire record was confusing. And that really is the point of procedural error and ensuring that the procedural process is followed, is because this court needs to have a clear record in order to review the resulting sentence, Your Honors. I also wanted to go back to what I was saying, the importance of the difference between past and present gang membership. As I said, the Martinez v. Holder case talked about the recognition that former gang membership is significant and what the consequences can be of that on someone's life and how difficult that decision is to make. And then it's actually the Hernandez v. Nueva case, which is the case that the district court relied so heavily on, that talks about how important present gang membership is. So, you know, really this court should want, if the district court was really concerned with Mr. Martinez Rivera's present gang membership, it should have heard evidence on that and made findings about that. Because Hernandez v. Nueva talked about, in this court's decision, reviewing Judge Chazanow's decision in that case, how it's so important that we deter MS-13 members from coming back to this country for the purpose of continuing their gang participation. So we do want to know if that's what's going on, and in that case then maybe a significant upward variance would be reasonable. But we didn't know that in this case, and there was absolutely no evidence to suggest that that is what was happening in this case. And I also want to point out that in Hernandez v. Nueva, the court wasn't at all concerned with some of the concerns that Judge Titus raised, and frankly that the government focuses on in its briefs, that the past gang membership suggests an increased danger. That's not what the court focused on at all. And in fact, if you then go back to Martinez v. Holder, the fact that Mr. Martinez Rivera was willing to come out and say, I am no longer a member of this gang, and willing to face that danger, is significant and is mitigating in a number of ways, but it also clearly distinguishes him from the people who pose a current threat by their continuing affiliation with gangs. If the court looks, just turning a little bit to the substantive reasonableness, which is really an alternative argument, and this is again, if you take the view, I want to be clear, if you take the view that the government is taking, that the district court was basing its decision solely on past membership, that it wasn't considering present membership at all, which I don't think is clear, but if you take that decision, that view, then I think the sentence is substantively unreasonable. And I'm the first to admit that this court almost never reverses on substantive reasonableness grounds, but there has to be a limit somewhere. And I looked, if you look at the cases that involve gang membership, in which upward variances were given, in a lot of those cases, the variances were significantly smaller than the variance in this case. Those cases all involved present and persistent gang membership. Almost all of them involved other activity as well. There was gang membership, and there was also actual testimony that the defendant was involved in drive-by shootings, for example. There was actually one case that I forgot to reply to in my reply, that the government mentioned from the Third Circuit, an unpublished case, in which the court relied on former gang membership, but in addition to former gang membership, in that case, and it's Santiago Bautista, the defendant had threatened to hit his girlfriend with a hammer and stab her in the stomach, and he engaged in document fraud, and he lied to the police, and the variance sentence he received was 19 months. So those are the kinds of facts that support a higher sentence. In this case, we have a young man who was a member of a gang from when he was 14 to 19. When he was 19, he committed the one offense that resulted in his deportation. He left the country, disavowed his membership with the gang, came back admittedly illegally, and there was no other evidence that he was a gang member or had any affiliation with gang members since then. That's it. And those facts, regardless of how infrequently, regardless of the level of discretion this court gives the district court, absolutely do not support a sentence of 41 months. What do you do about the Arias case where a sentence of 55 months, upper variance of 55 months, was affirmed? In the Arias case, that's actually an excellent example, Your Honor. It's also a Judge Titus case. In that case, there was evidence, and it was actually evidence presented to the court at sentencing that the defendant continued to associate with the gang even after his arrest, and there was detailed testimony about the defendant's leadership role in the gang. So, again, it's apples and oranges. I mean, the government seems to say the burden was on the defendant to prove that he was no longer a member of a gang, but there are so many cases, and they're all in my brief, in which the government put on evidence of present gang membership. I mean, the gang task forces in Montgomery County and in Northern Virginia are perfectly capable of compiling evidence and putting it on at sentencing to show current gang membership, and that did not happen in this case. Okay. If the court does not have any other questions, then I'll reserve my remaining time. Thank you. Thank you, Ms. Silver. Let's hear from the government. Good morning, Your Honors. May it please the Court, John Taddy for the United States. Mr. Martinez-Rivera's sentence is both procedurally and substantively reasonable. I'll address defendant's procedural reasonableness issue first, specifically regarding the Rule 32 issue. The district court did not err, much less plainly err, by refusing to determine whether the defendant withdrew from MS-13. Now, by refusing to determine whether the defendant withdrew from MS-13 is the important consideration here. The defendant asserts that the district court needed to make a finding as to whether or not Mr. Martinez-Rivera continued to be involved in MS-13. However, Rule 32 only requires the district court to address any disputed portion of the pre-sentence report or any other controverted matter that affects sentencing. As this court was getting to in some of the questions that it posed to the defendant, the district court clearly indicated, one, that it did not need to find whether or not Mr. Martinez-Rivera had withdrawn from MS-13. It stated, quote, I'm not going to decide whether he's withdrawn or not. Now, implicit within that statement is an indication that the sentence was based on the defendant's past gang membership. Based on Rule 32... But he cites Judge Chastanow's case where the critical point is the defendant is still an active member of MS-13. Well, Your Honor, I think if we consider the cases that the defendant cites in his reply brief, particularly United States v. Chandia, United States v. Morgan, and United States v. Bolden, those are all cases in which this court, in some way or fashion, found a Rule 32 error. The common theme in all those cases is that the district court failed to make factual findings that were necessary in order to calculate a guidelines range. Whether or not the defendant was involved in MS-13 was not a required factual finding in this particular case, either in order to calculate the guidelines range or to vary upwards for 41 months. In this case, there's an indication that based on the 3553A factors that what was considered by this court was not just the defendant's felony conviction or prior gang membership, but also a variety of different considerations that were important under the 3553A factors, such as deterring future crimes of the defendant, respect for the law, and to making sure that this defendant does not illegally re-enter the United States again. Current gang membership was irrelevant to the district court's sentencing. And I think the transcript... Current gang membership, yes, Your Honor. Current gang membership... ...to the Judge Chastanow's case. Well, I think, Your Honor, if you look at the transcript, the first thing that we rely upon is the standard of review in this case, and then what I'm discussing is sort of the de novo review of the case right now. If you look at the course of this hearing, there was no indication at any point in time that the defendant had lodged a Rule 32 objection and that it believed that current gang membership was having an effect on the district court's sentence. Wasn't it obvious that there was an issue and dispute as to whether or not he was currently a member? Well, it was an issue and dispute to some degree, Your Honor, in that the defendant asserted, and again, it's important to note that there were no actual evidence that was provided by the defendant as to whether or not he had withdrawn from MS-13. It was simply an assertion that was made within the pre-sentence report. However, it wasn't a matter of contro... Excuse me, in his pre-sentencing memorandum. However, it wasn't a matter of controversy that came up until defense counsel was concerned about having the defendant housed with other members of MS-13. The transcript indicates on page 189 that the statement as to whether or not he had withdrawn from MS-13 was important for Bureau of Prison's purposes. That does not sufficiently... On page 184, where the court says, not to be disregarded is the fact that the defendant is a member of the MS-13 gang. Yes, Your Honor. I think that under that statement, if that was the only indication that the district court had made as to how it was considering the facts of the case... Well, then it did it again on 187 at the top, where it says, I would impose a 41-month variant sentence for the same reasons relied upon by the poor circuit and Judge Chastanow. And that was specifically going into current gang activity. Yes, Your Honor. Well, it's our contention that in that case, MS-13 gang membership was demonstrated as being current. However, it's our reading of how the district court used that particular case is that it was indicating the MS-13 participation, the particular dangerousness of that gang. Well, he then says after that at line 5 on page 187, the fact is that the defendant is a member of a very dangerous street gang. I mean, these are declarative statements on the part of the trial court that are not ambiguous at all. Well, as a first point, Your Honor, under a plain error standard, which we contend applies here under the two panel decisions in United States v. Brame and United States v. Young, there was nothing in this case to indicate that this so calls into question the fairness of the judicial proceeding. However, even under a de novo standard, the court clarifies at the end, and I would agree that if those were the only statements indicated that they were somewhat questionable, but in the quickness of a particular hearing, it's understandable why the judge may have misspoke. But the judge clarifies at the end of the proceeding twice. He says first he can't make a finding as to whether or not Martinez Rivera is still a member of the gang, and, quote, I'm not going to decide whether he's withdrawn or not. Does the fact that he went through six of the 3553A factors help you in any way? It does in terms of substantive reasonableness, Your Honor. And the second portion of the inquiry here, so you have the first part, which is this Rule 32 objection. But the second part, and this court has repeatedly indicated that this is especially important, that harmless error analysis applies to procedural errors. And the district court explicitly indicated that to the degree that he erred in applying the guidelines, both based on the defendant's MS-13 gang participation as well as the circumstances of the defendant coming back after being deported expressly for participation in this gang, it's a frightening concept and it would impose an upward variance. If this court were to remand to the district court, there's a clear indication that both based on the fact that the district court indicated it's not going to decide whether he's withdrawn or not, that his current gang status was irrelevant to the ultimate 41-month sentence, as well as the statement that it would impose a 41-month sentence upon remand, that to remand in this case would be little more than an empty formality and the result of foregone conclusion, as this court wrote in United States v. Hargrove. Essentially, the 41-month sentence would be imposed again. The only thing that the district court likely would do is more explicitly state, I did not consider current gang membership. But there's every indication that the district court would impose the exact same 41-month sentence upon remand. Your position is he got the 41-month variance because of his past participation in MS-13? Not solely because of his past participation. His past participation in MS-13 was a particularly important consideration for the district court. However, the district court went through each of the 3553A factors carefully. Under A2A, it noted reentering the United States after being convicted not just of a felony, but of a gang-related felony, is particularly serious. It also noted the need to impose an adequate sentence in this circumstance. I'm looking at page 187. I consider the 41-month sentence to be appropriate as a variance sentence because of the MS-13 gang participation and the circumstances of this defendant coming back after having been convicted and deported, especially for participation in this gang, is a very frightening concept. Yes, that, Your Honor, would seem to be the specific reason for the variance, but that wasn't the only 3553A factor consideration that was indicated as. . . I meant when he says the reason for the variance. Yes, Your Honor. Yes, Your Honor. And that would be the focus of the harmless error analysis regarding whether or not the sentence was substantively reasonable. So it was both the illegal reentry as well as the prior MS-13 gang participation. No, not just prior. It came back expressly for participation in this gang. Well, Your Honor, it says convicted participation of the MS-13 street gang, which would indicate his past conviction, his Virginia conviction for criminal gang participation, is what the court was referencing there. How do we know that? We know that based on . . . It seems to me it could be read two ways. Well, Your Honor, first, under a plain error standard of review, the indication would be to affirm, but even under a de novo standard of review, the reading appears to be, to me at least, that convicted participation is clearly what the district court was basing its sentence on, and that's as a result of reading that in tandem with the statement that I'm not going to decide whether he's withdrawn or not. No, he says coming back after being convicted and deported expressly for participation in this gang. Well, after being deported expressly for participation in this gang, meaning . . . After being convicted and deported. Yes, Your Honor. Yes, Your Honor. But a bottom line question is, if it's this confusing, why don't we just send it back and ask the district court to be particular about what he's saying? I mean, why do we take a chance that this person might have been sentenced under a misconception or a misapplication? Well, the court could do that, Your Honor, but it's our contention that this would be a violation of the statements in Savion Matute as well as United States v. Hargrove that if the district court explicitly notes that it would vary upwards and impose the exact same sentence upon remand, that it would do so. Right, explicitly. And it did explicitly. And you're saying this language is explicit. Yes, Your Honor. I would also remind the court with respect to substantive reasonableness that this is a defendant who seeks to present the image of having withdrawn from this gang and that he came back solely for economic reasons. However, there was no evidence that was provided by the defendant other than his own statements to indicate that he had, in fact, withdrawn from MS-13. You know, you've done a lot of cases. A defendant makes representations. If the government doesn't accept that or is not willing to accept it, then they challenge it or they offer evidence to the contrary. Well, but first, Your Honor, it has to be clear that it goes to something that's material to the district court's ultimate sentence. And this circumstance came up as a matter of controversy with respect to Bureau of Prisons purposes. And it wasn't at all clear to the district court that it had to make a specific factual finding on this in order to render a decision. There's nothing in the pre-sentence report regarding the defendant's current gang membership. It only reflects the prior Virginia conviction for criminal gang participation. It notes his statements, you know, that he's withdrawn from the gang and that he's made this claim, but it wasn't material to either the calculation of the guidelines or, as I believe that this district court indicated, to the weighing of the 3553A factors. So under Hargrove and Savion Matute, what would happen is it would go back and there would just be a slightly clearer statement that would be made. Now, in Hargrove and Savion Matute, this court indicated that, you know, for interests of judicial economy and time for the parties and things like that, that this court will not remand or to do so would be a foregone conclusion. And here it would be a foregone conclusion. Judge Titus really conducted a by-the-book sentencing in this circumstance. And the last thing I would say is that on this court's mind was clearly the underlying violence of the crime for criminal gang participation. This is a defendant who is shot multiple times, goes to a party, gets thrown out, personally goes to a car and retrieves a machete and then falls down due to his injuries. That machete is picked up by a fellow gang member and it's used to attack one of the victims in this case. Meanwhile, the defendant is throwing glass bottles along with his fellow MS-13 gang members. When this court considered the violence and the history of violence of MS-13 in the history of this country, it clearly was weighing on the district court's mind and its decision to vary upwards. So I would say that although the court did not consider current gang membership, it was certainly within its province, under a deferential abuse of discretion standard for substantive reasonableness, to conclude that the upward variance to 41 months was reasonable in this circumstance given those factors as well as the other 3553i factors that were weighed. Your Honors, unless you have any further questions, we would urge you to the district court's judgment of sentence. I just have one question. Yes, Your Honor. What the practice is in your area. I notice in the PSR, probation officer noted as usual that there's no evidence that the offense or the offender would warrant a departure from the guidelines. What is the practice with regard to potential variances? Is there any kind of notice given required? Do you know before you get to a sentencing hearing that the judge is considering a variance? I'm not sure, Your Honor. I didn't handle this case at the trial level, so I'm not sure if there was any discussion of a variance prior, as well as practice. I'm not sure if the PSR indicates. Ms. Silver may be able to share any information on that fact. I generally handle the appeals portion of it. Okay. The reason I make the point is that when you get into a sentencing hearing, if you're not expecting the judge to vary, and the PSR has said there's no grounds for a departure that the probation officer is aware of, then things get confusing when you get in and the judge announces or imposes a variance without any prior warning. Yes. That's how these problems occur. What I think may have happened in this circumstance, Your Honor, is that much of the sentencing hearing focused on the crime of violence issue as to whether or not the 16-point enhancement was proper. As we know, based on the case law of both this court and DeCamp, it wound up not being appropriate. Given the back and forth, I would contend that the district court knew that there was a possibility that the 16-point enhancement may either be reversed based on future case law, but wanted to indicate and make it abundantly clear that even if that was the case, even if the guidelines range was the 8 to 14 months that the defendant requested, that it would still have varied upwards and imposed a 41-month sentence. It wasn't as if the district court was blindsided by the possibility that the crime of violence enhancement may have been invalid. It's clear that it noted that this was a possibility that that determination could be reversed in the future, and it wanted to make clear that if the case were remanded, that it would impose the same sentence, and under Savion Matutin-Hargrove, that to do so would result in a foregone conclusion. Thank you, Your Honors. Thank you, Your Honor. I can briefly address the question that you asked the government, that actually under this court's jurisprudence, the district court's not required to give notice of a variance, but I think that Your Honor hit on the precise point, which is that I, as counsel below, had absolutely no idea that he was going to be assuming to any degree that my client was still a member of MS-13, and therefore focusing so heavily on that membership in announcing a variance sentence, and as I said, that is why as soon as he finished announcing his sentence, I made two express-for-the-record objections saying, I want to be clear that Mr. Martinez-Rivera is no longer a member of MS-13. Now, He's saying you just did that for purposes of Bureau of Prisons' assignment. Right, and I respectfully disagree. I mean, it was the first sentence out of my mouth was that I, for the record, he is no longer a member. Then I moved on to BOP, and then actually I came back again and said, and again, for the record, the only evidence of gang membership is from 2004, and then admittedly at that point we did move on to what the judgment should look like because at that point I had believed I had preserved the record. I had asked for a much lower sentence than he gave, which meant that I did preserve my objection to his sentence in general, and then by raising the issue of present gang membership, I was objecting to the fact that his record was entirely unclear as to whether or not he was relying on present and past membership. The government kept saying that there wasn't a controverted matter or that it wasn't material. It was absolutely material, and it was the district court that made it material. Now, granted, in a lot of the other cases, it's the parties that raise the controverted matter and create the problem, but here it was the district court twice saying that he is a member of MS-13. Now, the government is focusing Your Honor's eyes on lines 11 through 17 of page 187, but Your Honor saw that at the top of that page, he began his announcement of the alternative variant sentence by saying I would impose the sentence for the same reasons that were relied on by Judge Chazanow and Hernandez v. Nueva, and then said the fact is that the defendant is a member of a very dangerous street gang. So I'm not sure how the government could claim that that's not material and that isn't a controverted matter that cuts to the heart of why the sentence was imposed in this case. On the issue of harmless error, the way this court's harmless error jurisprudence works is that first you decide whether you think the court would give the same sentence regardless of the legal error, which was the crime of violence guideline error, and then you go on to say is that sentence reasonable, procedurally and substantively reasonable. So even if you agree that he would have given the same sentence absent the guideline error, you still have to review that sentence for reasonableness. And given this record and the lack of findings and the confusion, as your court put it, about what the status of the gang membership is, the sentence was not reasonable. The standard of review, the government has several times now said that the court should apply plain error. I disagree. I believe that I preserve the record. It should be de novo. But I also believe that we should prevail under a plain error standard of review. I mean, the language of the rule could not be more plain. I mean, the court must decide, it has the word must, any controverted matters, that it relies on its sentencing. And as I've now repeated many times, it was relying on gang membership in some unknown form to impose this 41-month variance. And it clearly affected substantial rights, Your Honor. I mean, my client had a right to be sentenced based on evidence, on facts that were proven by evidence. And then he also has a right now to have this court be able to effectively review his sentence. And because of the error committed by this court, both of those rights were infringed. I also respectfully think that if this court was actually forced to decide the issue of gang membership, forced to hear evidence, it would have had to concede that there was no evidence of prior membership. And I seriously question whether it would have imposed a sentence of 41 months, particularly when it reread the Hernandez-Villanueva case, because that case absolutely doesn't support the sentence. Let me ask this. If we accepted or if we decided that the district judge made every decision in your favor, that is, he decided that he was a former member of MS-13, that he had withdrawn, that he was no longer a member, then it would be your position that the variant sentence he got as a matter of law was unreasonable? Well, it's that it was substantively unreasonable. Substantively unreasonable. Yes. As a matter of law. I don't know that as a matter of law is the right phrase to tack on to it, Your Honor. I've never read that. I mean, the way this court reviews sentences is it reviews it for procedural reasonableness and substantive reasonableness. It looks at the totality of the circumstances to see if the court abused its discretion. And I would argue that given the facts of Mr. Martinez-Rivera's life, compared to the facts of all the other defendants of every case that both the government and I carefully looked for, it would not have been reasonable to impose a 41-month sentence with the guideline range of 8 to 14 months. I mean, the court knows those ranges are there for a reason. And again, I actually admitted a high-end, you know, 14 months would have been reasonable. Maybe some upward variance would have been reasonable to reflect the fact that this had to do with gangs. But 41 months, no. It seems to me that's the only way you can prevail is if we give you the, you know, we presume that everything you argued was believed and accepted by the district court. And then we look at the sentence. We have to determine in light of all the circumstances and the findings that he would have made in your favor that that sentence he gave, that variant sentence he gave, was unreasonable. Respectfully, I disagree. No, because if you rule with me on the procedural error, then it is remanded. And he is instructed to make a finding. And I actually believe that if he makes a finding and he reviews Hernandez v. Nueva, that he would not impose a 41-month sentence. But the fact is this court isn't supposed to guess about that. I mean, we're not supposed to comb through the record and try to guess about what would happen. If the court makes an error, the case is remanded for resentencing, Your Honors. And that's the remedy that Mr. Martinez-Rivera is asking for the court. Thank you. Thank you. I'll ask the clerk to adjourn the court, and then we'll come back in Greek Council. This honorable court stands adjourned until 2.30 today.
judges: William B. Traxler, Jr., Barbara Milano Keenan, Henry F. Floyd